UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:18-cv-23443-GAYLES

**CARACOL TELEVISION, S.A.**,

    Plaintiff,

vs.

**TELEMUNDO TELEVISION STUDIOS, LLC., TELEMUNDO INTERNACIONAL LLC, AND TELEMUNDO NETWORK GROUP LLC**,

    Defendants.
_____/

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AS TO COUNT I OF THE AMENDED COMPLAINT**

Plaintiff Caracol Television, S.A. moves this Court pursuant to Rule 56, Federal Rules of Civil Procedure, for entry of summary judgment against defendant Telemundo Television Studios, LLC., (referred to herein as "Telemundo"), on Caracol's action for declaratory relief stated in Count I of the Amended Complaint (D.E. 7). Count I seeks declaratory relief from this Court in the form of a declaration that Caracol did not assign to Telemundo Caracol's one-half share of the copyright in Season 1 of the telenovela titled "El Señor de los Cielos," and that, as a result, Caracol and Telemundo continue as joint owners of the copyright in the first season of "El Señor de los Cielos." Caracol asserts that there are no genuine issues of material fact and it is entitled to judgment as a matter of law.

1

Uncontroverted Facts[1]

This action arises from a series of business transactions between Bogota-based Caracol and Miami-based Telemundo beginning in October 2012 for the co-production of a telenovela titled "El Señor de los Cielos." In a Co-Production Agreement entered in 2012, the parties agreed to share in funding the production and agreed that the parties would own the copyright in the program (called the "Series") jointly. The Co-Production Agreement also provided that if either of the joint owners wanted to produce a sequel or other "Derived Series," that party had to offer the other party an opportunity to co-produce. If the other party declined the offer, the parties agreed to negotiate in good faith the terms under which the interested party would be granted the sole right to produce the derivative work. (SMF ¶¶ 5–8). The production of the Series was completed and the program first aired in 2013. (SMF ¶¶ 12-13).

Following this procedure, Telemundo approached Caracol in 2013 offering the opportunity to co-produce a sequel to "El Señor de los Cielos," termed a "second part." Caracol declined to co-produce, and the parties negotiated the terms under which Telemundo was granted the right to produce the "Sequel," which became the second season of "El Señor de los Cielos." Accordingly, the parties agreed in a Letter Agreement dated August 27, 2013 with an attached Term Sheet that Caracol would not participate in the production of a second season of "El Señor de los Cielos," and that Telemundo would produce and own what was termed the "Sequel." (SMF ¶¶ 15-17).

In August of 2014, Caracol learned that Telemundo interpreted the provisions of the Letter Agreement to be a complete assignment of Caracol's interest in the original work, the first

---

[1] In accordance with Local Rule 56.1, the plaintiff files with this motion a Statement of Material Facts. References to specific uncontroverted facts in the Statement will be designated "SMF" followed by the relevant paragraph number(s).

season of "El Señor de los Cielos," produced in 2013. As a result of Telemundo's interpretation, it claims that it owns all of the copyright in "El Señor de los Cielos." (SMF ¶ 18). Telemundo has since produced four more seasons of "El Señor de los Cielos," has announced plans to produce a seventh season of the program and has produced a spin-off program titled "El Chema." (SMF ¶¶ 19, 20).

Caracol disputes Telemundo's claim and asserts that it did not make an assignment of its rights, and that it is entitled to compensation for Telemundo's breach of the parties' agreements. This would include accounting for the profits earned by Telemundo from the later seasons of "El Señor de los Cielos" produced by Telemundo after Season 2, and from a spinoff from the series, titled "El Chema."

Count I of the Amended Complaint seeks declaratory relief regarding this dispute over the ownership of the copyright. Count II asserts breach of contract claims against Telemundo based upon the premise that Caracol continues as the owner of a one-half interest in the copyright in the first season of "El Señor de los Cielos." Count III seeks an accounting for the profits earned by Telemundo from its continued exploitation of the original copyrighted program, and for an accounting as to certain royalties provided in the Letter Agreement. Count IV asserts claims for copyright infringement, specifically for the use of fictional characters authored by Caracol in earlier works owned by Caracol.

This motion for summary judgment addresses only the request for declaratory relief asserted in Count I. The basic question posed by Count I is whether or not the terms of the parties' Letter Agreement operate as an assignment of Caracol's copyright interest in the first season of "El Señor de Los Cielos."

Argument

1.   Summary Judgment Standards

Rule 56 of the Federal Rules of Civil Procedure provides for the means to obtain judgment on a claim or defense without trial. Rule 56(a) provides:

> A party may move for summary judgment, identifying each claim or defense —
> or the part of each claim or defense — on which summary judgment is sought.
> The court shall grant summary judgment if the movant shows that there is no
> genuine dispute as to any material fact and the movant is entitled to judgment as a
> matter of law. The court should state on the record the reasons for granting or
> denying the motion.

As stated by this Court in *Pons v. Latin Motors Int'l, LLC*, 17-CV-22439, 2018 WL 2688797, at *1–2 (S.D. Fla. May 8, 2018):

> Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment "is
> appropriate only if 'the movant shows that there is no genuine issue as to any
> material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v.
> Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting Fed. R. Civ. P.
> 56(a)); *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010). "By its
> very terms, this standard provides that the mere existence of *some* alleged factual
> dispute between the parties will not defeat an otherwise properly
> supported motion for summary judgment; the requirement is that there be
> no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
> 247–48 (1986). An issue is "genuine" if a reasonable trier of fact, viewing all of
> the record evidence, could rationally find in favor of the nonmoving party in light
> of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014).
> And a fact is "material" if, "under the applicable substantive law, it might affect
> the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256,
> 1259–60 (11th Cir. 2004). "Where the material facts are undisputed and all that
> remains are questions of law, summary judgment may be granted." *Eternal Word
> Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d
> 1122, 1138 (11th Cir. 2016).
>
> The Court must construe the evidence in the light most favorable to the nonmoving
> party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*,
> 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for
> summary judgment, "the nonmoving party must offer more than a mere scintilla of
> evidence for its position; indeed, the nonmoving party must make a showing
> sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v.
> Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). The nonmovant must come
> forward with evidence sufficient to call into question the inference created by the

4

movant's evidence on the particular material fact. Only if after introduction of the non-movant's evidence, the combined body of evidence presented by the two parties relevant to the material fact is still such that the movant would be entitled to a directed verdict at trial—that is, such that no reasonable jury could find for the non-movant—should the movant be permitted to prevail without a full trial on the issues. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993).

Under Rule 56(c), "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c).

"Unsworn statements do not meet the requirements of Rule 56," and district courts may not rely on such statements in ruling on a motion for summary judgment. *Dudley v. City of Monroeville*, 446 F. App'x 204, 207 (11th Cir. 2011).

Relatedly, Southern District of Florida Local Rule 56.1 requires that a motion for summary judgment be accompanied by a statement of undisputed material facts that is, *inter alia*, "supported by specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court." *Id.* S.D. Fla. L.R. 56.1(a)(2). Local Rule 56.1(b), which governs the effect of a nonmovant's failure to controvert a movant's statement of undisputed facts, provides: "All material facts set forth in the movant's statement filed and supported as required above *will be deemed admitted* unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record." *Id.* R. 56.1(b) (emphasis added).

*Accord*, *Azze v. Dade Med. Coll., Inc.*, 15-CV-24175, 2017 WL 880426, at *1–2 (S.D. Fla. Mar. 6, 2017).

With this motion, as required by Local Rule 56.1, Caracol is filing a statement of undisputed material facts, supported by references to admitted allegations in pleadings and declarations made under oath.[2] These undisputed facts support that claim that Caracol did not make an assignment of its one-half interest in the copyright in Season 1 of "El Señor de los

---

[2] Caracol relies upon the Declaration of Jorge Martinez de Leon, August 23, 2018 (DE 3-1), and the Declaration of Jorge Martinez de Leon, July 12, 2019 (filed with this motion).

Cielos," and Caracol is entitled to summary judgment declaring that no assignment of copyright was made and that Caracol continues as the owner of a one-half interest in the first season of "El Señor de los Cielos."

    2.    <u>Federal Jurisdiction</u>

This action for declaratory relief requires the application of U.S. Copyright Law to determine the issue presented. This Court has exclusive jurisdiction pursuant to 28 U.S.C. 1338(a), which provides in part:

> The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights.

    3.    <u>Federal Declaratory Action</u>

28 U.S.C. § 2201(a) provides:

> In a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.[3]

Caracol presents an actual controversy between the parties over the effect of their Letter Agreement upon the parties' joint ownership of the copyright in Season 1 of "El Señor de los Cielos."

    4.    <u>Federal Law of Rights of Co-Owners of Copyright</u>

The authors of a joint work are co-owners of copyright in the work. 17 U.S.C. § 201(a). Among the exclusive rights enjoyed by copyright owners under Section 106 of the Copyright

---

[3] Exceptions described in the statute are not applicable in this case, and are omitted.

Act, 17 U.S.C. § 106, is the right to prepare or authorize others to prepare derivative works based upon the copyrighted work.

Normally, a joint owner of a copyright has the right to prepare a derivative work without the permission or authorization of the other owner, owing only a duty to account to the co-owner for its share of profits realized from the exploitation of the derivative work. *Oddo v. Ries*, 743 F.2d 630, 632–33 (9th Cir. 1984). Caracol and Telemundo agreed, however, to restrict that right and to require either co-production of derivative works or negotiation of terms permitting one party to solely produce derivatives.

The Copyright Act provides guidance on the extent of the ownership of an author of a derivative work. 17 U.S.C. § 103(b) provides:

> The copyright in a … derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.

Thus, without some agreement to the contrary, Caracol's permission to allow Telemundo to produce the Sequel does not affect the joint ownership of the original Series.

    5.    <u>Federal Copyright Law of Assignments</u>

Title 17, Section 101, U.S. Code, defines a "transfer of copyright ownership" as

> an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, but not including a nonexclusive license.

The means of transferring one's ownership of a copyright is controlled by 17 U.S.C. § 204(a), which provides,

> A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is

> in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.

Thus, compliance with Section 204(a) is required in order for Caracol to have effectively transferred to Telemundo its share of copyright ownership in Season 1 of "El Señor de los Cielos."

"Section 204 ensures that the creator of a work will not give away his copyright inadvertently and forces a party who wants to use the copyrighted work to negotiate with the creator to determine precisely what rights are being transferred and at what price." *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990). While state statutes of frauds serve a purely evidentiary function, "a transfer of copyright is simply 'not valid' without a writing. … Section 204's writing requirement not only protects authors from fraudulent claims, but also 'enhances predictability and certainty of ownership—'Congress's paramount goal' when it revised the Act in 1976.'" *Id.; Konigsberg Intern. Inc. v. Rice*, 16 F.3d 355, 357 (9th Cir. 1994).

"The copyright laws do not specify what constitutes a sufficient note or memorandum." *Pamfiloff v. Giant Records, Inc.*, 794 F. Supp. 933, 936 (N.D. Cal. 1992). "No magic words must be included in a document to satisfy 204(a). Rather, the parties' intent as evidenced by the writing must demonstrate a transfer of the copyright." *Sisyphus Touring, Inc. v. TMZ Productions, Inc.*, 208 F. Supp. 3d 1105, 1112–13 (C.D. Cal. 2016).

In *Pamfiloff,* the court found Section 204(a) to be analogous to a statute of frauds, which requires a writing that (1) reasonably identify the subject matter of the agreement, (2) be sufficient to indicate that the parties have come to an agreement, and (3) state with reasonable certainty the essential terms of the agreement.

> To be valid, an assignment under § 204(a) must "clearly identify the deal and its basic parameters." *Weinstein Co. v. Smokewood Entertainment Group, LLC,* 664 F.Supp.2d 332, 342 (S.D.N.Y.2009). Even as between the copyright owner and the alleged licensee,

> a particular writing must reflect a "clear and equivocal" intention on the part of the copyright owner to transfer ownership. *Id.* at 341. "The purpose of the signed writing requirement is to ensure that the copyright owner deliberately transfers is [sic] ownership interest and that the owner does so in way that provides the parties with a clear guide to their rights and responsibilities." *Id.* (citing *Effects Associates,* 908 F.2d at 557).

*Woods v. Resnick*, 725 F. Supp. 2d 809, 826 (W.D. Wis. 2010).

The "terms of any writing purporting to transfer copyright interests, even a one-line pro forma statement, must be clear." *Papa's–June Music v. McLean*, 921 F.Supp. 1154, 1159 (S.D.N.Y.1996).

> … any ambiguity concerning the alleged transfer must be interpreted in favor of the original copyright holder in order to satisfy the purpose of Section 204(a). According to the Ninth Circuit, Section 204(a) "ensures that the creator of a work will not give away his copyright inadvertently and forces a party who wants to use the copyright work to negotiate with the creator to determine precisely what rights are being transferred and at what price." *Effects Assocs.*, 908 F.2d at 557. Another Judge of this Court has held that any ambiguity in the transfer document must be construed in favor of the original copyright holder in order to avoid such inadvertent transfers. *Cassway v. Chelsea Historic Props.*, 1993 WL 64633 (E.D.Pa. Mar. 4, 1993); see also *Tasini v. New York Times Co.*, 972 F.Supp. 804, 810 (S.D.N.Y.), rev'd on other grounds, 206 F.3d 161 (2d Cir.2000).

*Bieg v. Hovnanian Enterprises, Inc.,* 157 F. Supp. 2d 475, 480 (E.D. Pa. 2001). Accordingly, if the writing in issue does not reflect a clear intent by Caracol to transfer its copyright ownership, it cannot operate as such a transfer. Any ambiguity in the document must be construed in favor of Caracol to avoid any less-than-than-clear assignment.

     5.    <u>Judicial Interpretation of Contracts</u>

"Under federal common law, where a contract 'is so worded that it can be given a certain definite legal meaning or interpretation, then it is not ambiguous, and the Court will construe the contract as a matter of law.'" *Mycko v. M/Y Amarula Sun*, No. 14-62215-CIV, 2015 WL 2384060, at *3 (S.D. Fla. May 19, 2015) (quoting *Foreman v. Exxon, Corp.*, 770 F.2d 490, 496 (5th Cir.1985). Under Florida law "[w]here a contract is clear and unambiguous, it must be

9

enforced pursuant to its plain language... In such a situation, the language itself is the best evidence of the parties' intent, and its plain meaning controls." *Hahamovitch v. Hahamovitch*, 174 So.3d 983, 985 (Fla. 2015). *See also Carretta v. Royal Caribbean Cruises Ltd.*, 343 F. Supp. 3d 1300, 1302–03 (S.D. Fla. 2018).

As established above, under Section 204 of the Copyright Act, a clear statement of the intent to transfer a copyright is required, and only clear and unambiguous language transferring a copyright will suffice.

6. <u>The Letter Agreement Is Not an Assignment of Caracol's Copyright</u>

Caracol does not dispute that the copyright in Season 2 of "El Señor de los Cielos" is owned by Telemundo. That is exactly what the Letter Agreement was designed to do, to allow Telemundo to prepare a derivative work, a "Sequel" composed of "approximately sixty (60) episodes … based on the original format of the Series."

On its face, the parties' Letter Agreement does not assign Caracol's share of the copyright in the original Series to Telemundo. There is no express transfer of Caracol's rights in the Letter Agreement. Nothing in the wording of the Letter Agreement operates as an "instrument of conveyance." None of the wording evidences a clear intent to transfer Caracol's copyright. On its face, then, the Letter Agreement fails to satisfy the requirements of Section 204(a).

It is clear that the Letter Agreement is concerned only with rights in the "Sequel," the program that became the second Season of "El Señor de los Cielos." The clear intent of the Letter Agreement is to provide Telemundo with permission to produce the second season and to own the copyright in the Second Season only.

The Letter Agreement begins with the statement, "This offer letter is provided to you [Caracol] pursuant to Section 5(b) of the Co-Production Agreement …," which is the agreement governing the parties' co-production the original Series, that is, the first season of "El Señor de los Cielos." The referenced Section 5(b) provided that in the event either party became interested in "creating and/or producing or licensing" a so-called Derived Series in the form of a remake, spinoff or sequel, it would offer the other party an option to co-produce the Derived Series. The provision provided further that if the other party declined to co-produce, then "the Parties shall negotiate in good faith … the terms under which the interested party may be granted sole right to produce the Derived Series." The provision goes on to describe minimum terms including payment of a license fee and a first right of refusal on exhibition rights in the party's home territory.

Accordingly, the Term Sheet attached to the Letter Agreement provides Telemundo the right to develop and produce a sequel, provides it with permission to use elements of the original series, and consents to Telemundo's ownership of the resulting sequel. This is made clear in Section 3(b) of the Term Sheet which provides, in part:

> The Sequel will be based on the original format of the Series, which [Telemundo] shall have all right to use all elements (e.g., characters, story, scenarios, locales, etc.) derived from the Series and any new elements added by [Telemundo] for purposes of creating the Sequel.

This grant of rights is superfluous if the parties had intended a transfer of all of Caracol's rights in the original Series. If the Term Sheet could be interpreted to make Telemundo the sole owner of the original Series, it would not need Caracol's permission to use its format or its elements to prepare the Sequel. Thus, the parties' agreement contradicts an intent to transfer ownership.

Further, the grant of rights to use elements of the original Series, in the plain language of the Term Sheet, applies to the Sequel only, and cannot be construed as permission to produce subsequent sequels and spinoffs.

Section 3(b) goes on to acknowledge that the original series contained material specifically licensed by Caracol, and states:

> For clarity, [Telemundo] will not be entitled to use images and content licensed by Caracol for the Series, except as agreed mutually by the Parties in a case-by-case scenario.

This provision limits Telemundo's ability to use elements from the original Series that were separately owned by Caracol. While authorizing Telemundo to use jointly-owned elements of the original Series, the language of Section 3 makes no change in the parties' joint ownership of the original Series.

The plain language of the agreement clearly defines the rights of Telemundo in the Sequel. Section 7 of the Term Sheet, titled "Ownership," makes it clear that Telemundo is to own the Sequel that it will produce. The first paragraph states,

> From inception through all stages of completion, the Sequel and all elements thereof, including the underlying works, format and scripts of the Series, will be exclusively owned by [Telemundo] throughout the world.

This provision makes it clear that Telemundo owns the Sequel and all of its elements of the Sequel including those elements that came from the Series. While Telemundo has asserted that this provision gives it ownership of all elements of the original series, this provision does not support that position. The language does not state that Telemundo owns all of the Sequel and all of the original series. It simply states that Telemundo owns the Sequel including the elements that were borrowed from the original series. The "including" clause serves to illustrate the elements of the Sequel that Telemundo would own. This clarifies that Telemundo owns the

Sequel in its entirety, free of any claim of ownership by Caracol based upon the use of elements contained in the original Series. An interpretation of this clause as a surrender of all of Caracol's copyright ownership in the original Series not only defies logic, but fails the test of assignment provided in 17 U.S.C. §204.

The language of the Letter Agreement contradicts an intention to make an assignment of copyright. Provisions of the Letter Agreement make a specific grant to Telemundo of permission to use elements of the original Series in Telemundo's production of the Sequel. If a transfer of Caracol's rights in the original Series were transferred, such permission would be unnecessary. The granting such permission, then, contradicts an intent to transfer ownership of Caracol's share of copyright.

The Letter Agreement's sole reference to the parties' earlier agreements is the statement that the offer is made pursuant to Section 5(b) of the Co-Production Agreement, acknowledging the obligation to offer a joint production or to negotiate the terms under which Telemundo could produce the Sequel on its own. If the intent of the Letter Agreement was to transfer all of Caracol's copyright ownership to Telemundo, then Telemundo, as the sole owner of the original Series, would no longer owe any obligations to Caracol under the Co-Production Agreement, and compliance with Section 5(b) would be unnecessary. Again, the language of the Letter Agreement contradicts any intent to transfer Caracol's interest in the original Series.

For any of these reasons, the Letter Agreement and Term Sheet cannot stand as an expression of transfer of Caracol's share of ownership interest in the original Series. Most important, however, is the lack of a clear expression, in a written and signed instrument, of an intent to transfer Caracol's share of the copyright in the original Series. The Letter Agreement

fails to satisfy the requirements of 17 U.S.C. § 204 and cannot operate as a transfer or assignment of Caracol's interest in the copyright of the original Series.

Conclusion

The pleadings, admissions, and declarations on file show that there is no genuine issue of material fact and that the plaintiff is entitled to a judgment against the defendants as a matter of law. The parties' Letter Agreement, claimed by Telemundo to embody an assignment of Caracol's copyright in Season 1 of "El Señor de los Cielos," does not satisfy the requirement imposed by Section 204(a) of the Copyright Act. Accordingly, this Court should enter summary judgment in favor of plaintiff Caracol on Count I of the Amended Complaint and declare that Caracol remains the owner of a one-half share of the copyright in Season 1 of "El Señor de los Cielos."

DATED this 12 day of July, 2019.

Respectfully submitted,

*/s/David M. Rogero/*
**David M. Rogero**
Fla. Bar No. 212172
E-mail: dmrogero@dmrpa.com
David M. Rogero, P.A.
2625 Ponce de Leon Blvd, Suite 280
Coral Gables, FL 33134
Telephone: (305) 441-0200
Fax: (305) 460-4099
*Attorney for Plaintiff Caracol Television S.A.*

## CERTIFICATE OF SERVICE

I certify that on July 12, 2019, I served the foregoing Plaintiff's Motion for Summary Judgment as to Count I of the Amended Complaint, together with the Plaintiff's Statement of Material Facts Supporting Plaintiff's Motion for Summary Judgment as to Count I of the Amended Complaint and the Declaration of Jorge Martinez de Leon in Support of Plaintiff's Motion for Summary Judgment as to Count I of the Amended Complaint, upon the following persons through the Court's CM/ECF facility:

> Gregory W. Herbert, Esq.
> Joshua Brown, Esq.
> Greenberg Traurig, P.A.
> 450S. Orange Avenue, Suite 650
> Orlando, FL 32801
> herbertg@gtlaw.com; brownjr@gtlaw.com
> *Attorneys for Defendants*

/s/David M. Rogero/