[Logo]
**TELEMUNDO**
INTERNACIONAL

## Master Agreement for a Volume of Program Licenses and Television Formats

On the date hereof, September 30, 2014, between **TELEMUNDO INTERNACIONAL LLC** a company existing under the laws of Delaware, United States of North America, an office of which is located at 2745 Ponce de León Blvd., Coral Gables, Florida 33134, United States of North America, tax identification number 65-0996005 ("Telemundo"), and **CARACOL TELEVISIÓN S.A.**, a company existing under the laws of Colombia, domiciled at street 103, #69B-43, Bogotá, Colombia, tax identification number 860.025.674-2 (the "Licensee") it has been agreed to enter into this master agreement for a volume of program licenses and television formats ("Agreement") which shall be subject to the following special terms and general conditions. Telemundo and the Licensee shall collectively be referred to as the "Parties".

### Special Terms

In case of conflict between the special terms and the general terms and conditions of this Agreement, the special terms shall prevail. To the extent required by context, words in singular include their respective plural forms and vice versa.

1) **PURPOSE:** This Agreement defines the terms and conditions under which the Licensee receives, on an exclusive basis, from Telemundo the Broadcasting Rights with respect to all the Programs (defined below) and the right to purchase Formats (defined below) in the Territory (defined below), in consideration of its obligations as defined herein.

2) **EFFECTIVE TERM:** Two years ("Effective Term") divided into the following two periods:

a. First Period: January 1, 2015 through December 31, 2015
b. Second Period: January 1, 2016 through December 31, 2016.

3) **TERRITORY:** Colombia

4) **BROADCASTING RIGHTS:** The rights granted to the Licensee for the transmission of the Programs (defined below) and acquisition of the Formats (defined

1

CR1.01.0084

Exhibit "H-1" (translation)

below) through the Media (defined below), according to the terms of this Agreement and the Notices (defined below).

**5) MEDIA:**

a. Open Television, with exclusivity.

Telemundo reserves all the rights of exploitation of the other media and/or of those not granted to the Licensee with exclusivity, including, without limitation, Pay-Per-View Television, Premium Cable, satellite, Home Video, HDTV, Internet, digital exploitation, wireless devices, cellular telephony and any other means of communication now or hereinafter existing.

**6) PROGRAMS:** Includes: (i) all the programs of Telemundo's catalogue which shall have been produced outside the Territory, which may be premieres, i.e., not broadcasted in the Territory before this Agreement ("*Premieres*") (ii) the programs that shall have been previously broadcasted in the Territory by the Licensee under the terms of this Agreement or before, as well as the programs previously broadcasted by third parties in the Territory and that are available to be granted under license to the Licensee ("*Reruns*"), (iii) Co-Productions or special productions available in the Territory ("*Co-Productions*") and (iv) any programs produced in the Territory, the price of which shall be timely negotiated ("*Colombian Programs*"). Premieres, Reruns, Co-Productions and Colombian Programs shall be collectively referred to as the "Programs", and individually as a "Program".

**7) FORMATS:** It refers to the distinctive elements of a Program, including, without limitation, the title, configuration, studio design, general concept, the framework within which the characters or participants operate, special effects, themes, premises, design, illustration, composition, know-how, trademarks used to produce the program or any other distinctive feature of such Format ("Format").

**If the Licensee wishes to acquire the rights to a Format, the price and exploitation conditions thereof shall be negotiated by the Parties at the appropriate time.**

**8) BROADCASTING TERM**: The Licensee shall be entitled to Broadcast each Program during the following terms, as defined below:
a. Open Television: One (1) year following the date established in the relevant Purchase Order ("Broadcasting Term").

**10) NUMBER OF BROADCASTINGS:**
b. Open Television: One (1) Broadcasting of each of the Programs.

**11) RIGHT OF FIRST REFUSAL:** Telemundo shall give written notice to the Licensee of the Programs available in the Territory, including a demo and the first two (2) episodes, and in the case of Formats, Telemundo shall send for the Licensee's consideration written and audiovisual information thereof ("Notice"). The Licensee shall be entitled to a right of first refusal within the Territory to choose the Programs and/or Formats included in

2

each Notice ("Right of First Refusal"). The Licensee shall have thirty (30) business days following receipt of the Notice to exercise the Right of First Refusal through a written communication addressed to Telemundo. Following the thirty (30) business days, Telemundo may grant the license to third parties within the Territory of any Programs and/or Formats that the Licensee failed to purchase within the above specified time frame.

**12) PURCHASE ORDERS:** For each Program selected by the Licensee, Purchase Orders shall be issued specifying the Program and the applicable terms pursuant to the form included in Annex A. Following the issue of the Purchase Order, the purchase price of the Program(s) shall apply immediately to the Minimum Guarantee (defined below) for the respective period, irrespective of whether the Licensee broadcasts the Program(s) or not. Each Purchase Order shall establish the Broadcasting Rights of the Program(s). However, the Broadcasting of the Program(s) shall commence within a period that shall not exceed one year following the date of the relevant Purchase Order ("Effective Term of the Purchase Order"). The Licensee undertakes to start broadcasting within the Effective Term of the Purchase Order; however, Telemundo may extend the Effective Term of the Purchase Order where required to end the broadcasting of the Program, in accordance with provisions of section 16. In addition, all of the General Terms and Conditions of this Agreement shall be deemed to be included. Each Purchase Order shall be issued in two (2) original copies signed by both parties.

If the Licensee wishes to acquire any Format, the parties shall timely negotiate the terms and conditions, as well as the value thereof.

**13) PRICE OF THE PROGRAMS:** The total price allotted to each Program against the relevant Period Value shall be calculated by multiplying the applicable value or price per episode in the respective period, by the number of episodes of the Program included in the relevant Purchase Order ("Price"). For the purposes of this section, the episodes of each Program are based on an average duration of one (1) commercial hour each.

   a. **First Period Prices:** From January 1, 2015 through December 31, 2015 ("First Period"), the following prices shall apply per episode of each Program within the Territory:

| | Programs | |
|---|---|---|
| **Broadcasting Time Slots** | **Price per Episode for Premieres** | **Price per Episode for Reruns** |
| Morning | $2,097.00 | $1,048.50 |
| Prime | $8,387.00 | $4,193.50 |
| Non-Prime | $4,194.00 | $2,097.00 |
| Co-Production | $13,979.00 | $6,989.50 |

3

b. **Second Period Prices:** From January 1, 2016 through December 31, 2016 ("Second Period"), the following prices shall apply per episode of each Program within the Territory:

| Programs | | |
|---|---|---|
| Broadcasting Time Slots | Price per Episode for Premieres | Price per Episode for Reruns |
| Morning | $2,202.00 | $1,101.00 |
| Prime | $8,807.00 | $4,403.05 |
| Non-Prime | $4,404.00 | $2,202.00 |
| Co-Production | $14,678.00 | $7,339.00 |

**13) CONTRACT VALUE:** Irrespective of the number of Programs broadcasted or not by the Licensee, the Licensee shall pay Telemundo the following minimum values applicable to each period, during the Effective Term hereof.

a. **First Period: First Period Value:** The Licensee shall pay Telemundo eight hundred and fifty thousand United States Dollars (US$850,000) as First Period Value. The Price of any Program and/or Format included in Purchase Orders issued during the First Period shall be applied to the First Period Value. The Licensee shall pay Telemundo the First Period Value in twelve monthly and consecutive payments, eleven of seventy thousand eight hundred and thirty-three United States Dollars and thirty-three cents (US$70,833.33), and a final payment of seventy thousand eight hundred and thirty-three United States Dollars and thirty-seven cents (US$70,833.37). The first payment shall be due on January 15, 2015.

b. **Second Period: Second Period Value:** The Licensee shall pay Telemundo eight hundred and ninety-two thousand five hundred United States Dollars (US$892,500.00) as Second Period Value. The Price of any Program and/or Format included in Purchase Orders issued during the Second Period shall be applied to the Second Period Value. The Licensee shall pay Telemundo the Second Period Value in twelve monthly and consecutive payments, eleven of seventy-four thousand three hundred and seventy-five United States Dollars (US$74,375.00), and a final payment of seventy-four thousand three hundred and seventy-five United States Dollars (US$74,375.00). The first payment shall be due on January 15, 2016.

**14) PROGRAMS AND/OR FORMATS PURCHASED UNDER OR IN EXCESS OF THE MINIMUM GUARANTEE:**

a) **Programs and/or Formats Purchased Under the Minimum Guarantee:** If, during any Effective Term, the Licensee purchases less Programs and/or Formats than the Minimum Guaranteed, the Licensee shall pay the total amount applicable to the Minimum Guarantee for the relevant Period and shall not be entitled to any

4

reimbursement therefor. For the purposes of calculating the applicable Minimum Guarantee, Telemundo shall submit to the Licensee an annual report with detailed information on the payments made as of the relevant date by the Licensee, as well as the Purchase Orders issued as of the date of such report ("Annual Report").

b) **Programs and/or Formats Purchased in Excess of the Minimum Guarantee:** If, during any Period, the Licensee purchases more than the Minimum Guaranteed amount, the Licensee shall pay Telemundo the Price for the Programs and/or Formats purchased in excess. Payments under this section will be in addition to the monthly payments provided for in the Agreement as Minimum Guarantee, and the parties shall timely agree on the payment terms of these Purchase Orders issued in Excess of the Minimum Guarantee.

**15) PROGRAMS UNDER PRODUCTION:** If any Purchase Order includes Programs still under production as of the date of signing the relevant Purchase Order ("Programs Under Production"), the following shall apply:

c) **Higher or Lower Number of Episodes:** If, once the Purchase Order has been issued, Telemundo becomes aware of the fact that any Program Under Production will have a higher or lower number of episodes than as indicated in the relevant Purchase Order, Telemundo shall immediately give notice thereof to the Licensee, and:

   i. If such notice is sent within the same Period during which the original Purchase Order was issued, Telemundo shall issue an amendment with the new and final number of episodes and the new value of the Purchase Order, which shall be applied to the Minimum Guarantee of that same Period;

   ii. If the notice is sent in the period following the issue of the Purchase Order (i.e., the Purchase Order is issued in the First Period and Telemundo notifies the Licensee that a Program Under Production will end with a number of episodes that differs from the number specified under such Purchase Order during the Second Period), Telemundo shall issue an amendment with the new and final number of episodes and the new value of the Purchase Order. In such event, the Licensee shall receive a credit (or debit, as the case may be) for the Price of each episode under or in excess of the final number of episodes of the Program, which shall be applied to the Minimum Guarantee of the Period in effect at the time of the notification. The Price applicable to any additional episode shall be the price in effect at the time of the notice.

**16) BROADCASTING OF THE PROGRAMS PURCHASED:** The Licensee shall have one (1) year following the commencement of the effective term of each Purchase Order to Broadcast each Program. Prior to the expiry of the effective term of any Purchase Order issued hereunder, if the Licensee requires an extension of the effective term on account of the fact that the Broadcasting of the relevant Program has not commenced, the

5

CR1.01.0088

Exhibit "H-1" (translation)

Licensee agrees to request that Telemundo authorizes such extension prior to the expiry of the effective term of the relevant Purchase Order. In the event that Telemundo authorizes such extension, the Parties shall sign an amendment to the Purchase Order, specifying the terms for the extension. Following the expiry of the Effective Term hereof, the Licensee's right to undertake/continue with the authorized Broadcasting of the Program purchased under Purchase Orders shall be subject to the Licensee's payment of all sums and compliance with all of the obligations provided for hereunder.

**17) EXTRAORDINARY RENEGOTIATION EVENT:** If, due to unavailability, Telemundo is unable to offer the Licensee a number of Programs and/or Formats sufficient to comply with the Minimum Guarantee, in any period of the Effective Term, Telemundo shall give written notice thereof to the Licensee, and such Minimum Guarantee shall be subject to renegotiation by the Parties. In addition, if during the Effective Term of the Agreement any public entity or government agency enacts any law or regulation which limits the broadcast of the number of Programs produced outside of the Territory that could be broadcasted by the Licensee in accordance with the terms of this Agreement, and such limitation has a material impact on the Licensee's capacity to comply with the terms hereunder, the parties mutually agree to renegotiate the terms of the Minimum Guarantee in effect at the time such law or regulation enters into full force and effect.

**18) NOTICES:**

Telemundo:
Telemundo Internacional, LLC
2745 Ponce de León Blvd.
Coral Gables, FL, 33134
USA
Attention: Business Affairs

Licensee:
Caracol Televisión S.A.
Calle 103, #69B-43
Bogotá, D.C
Colombia
Attention: Jorge Martínez

<u>Cc</u>:
Telemundo Internacional, LLC
Business & Legal Affairs
2290 West 8th Avenue
Hialeah, Fl 33010
USA

**END OF THE SPECIAL TERMS**

6

CR1.01.0089

Exhibit "H-1" (translation)

**General Terms and Conditions**

The licenses granted for each of the Programs under this Agreement, and evidenced by a Purchase Order, shall be subject to the following terms and conditions.

1. **DEFINITIONS:** In addition to any term defined in the special terms and conditions, capitalized terms used in this Agreement, shall have the following meanings:

    a. <u>Affiliate</u> means any other person directly Controlled by the relevant person, and any person with respect to another person, where both are under the joint Control of the same person. Telemundo Internacional LLC, Telemundo Network LLC and Telemundo Television Studios LLC are under the control of the same person, and consequently are mutual Affiliates. Any entity directly controlled by Telemundo Internacional LLC, Telemundo Network LLC and Telemundo Television Studios shall be deemed to be Affiliates thereof. For clarification purposes, neither NBC Universal Inc., nor General Electric Inc. shall be deemed to be Affiliates hereunder.

    b. <u>Closed Circuit</u> means any Broadcasting by individual cable system, located in the Territory, which does not constitute by itself a cable / satellite program service, which is broadcasted in limited areas such as a hotels, oil platforms, trains, aircrafts, etc.

    c. <u>Premium Cable</u> means any Broadcasting, by any means, of a television program service, for which members of the public pay a separate charge, either regularly or on a pay-per-view basis, in addition to a regular charge for the Basic Cable service.

    d. <u>Digital Catch Up</u> means the right to offer and make available programs online, concurrently with the relevant Broadcastings by Open Television, or on a "upon demand" basis (i.e. after such Broadcastings), so they can be accessed by the relevant users, located in the Territory, through any connected device (as the term is currently used in the television industry).

    e. <u>Control</u> means the power to manage or determine, directly or indirectly, the management and the policies of a Person, either by the ownership of common shares, by contract, or otherwise. The terms Controlled and Controlling shall be construed accordingly.

    f. <u>Broadcasting</u> means any transmission, distribution, broadcasting, exposure or presentation of any audiovisual program, including without limitation any air signal, cable, satellite, microwave, Internet, online, satellite antenna, LPTV station, closed circuit television circuit, HD television, radio (for purposes of simulcast only); and any services distributing multiple channels from an individual or multiple point, all by subscription, license, lease, sale or on any other basis, and any existing or future transmission or reception method.

7

CR1.01.0090

<span style="color:red">Exhibit "H-1" (translation)</span>

g. <u>Law</u> means any present or future law, bylaws, regulation, provision, court decision or similar order.

h. <u>Promotional Material</u> means any summary, audio or video extract, (fixed) photograph, advertisement advance, press kit or similar materials, produced to promote and/or advertise the Programs.

i. <u>Talent</u> means any actor, director, producer, writer or script writer, presented or participant, and any other essential personnel involved in the creative process and in producing the Programs.

j. <u>Open Television</u> means any Broadcasting of a television program service by open VHF or UHF signal, so that the audio and video of such program can be received without any charge to the viewer, by a roof antenna or TV set. "Open Television" includes any retransmission of a UHF or VHF signal by cable, satellite or any online system.

k. <u>Pay Television</u> means any Broadcasting, by any means, of a Television program service: (i) included as a part of a program service package, for which any members of the public pay a regular charge for the right to receive such service package, and (ii) for which a separate charge is not usually collected for the right to receive such service.

2. **LICENSE:** Telemundo hereby grants, and the Licensee accepts, a limited license under copyright to Broadcast each Program in the Territory during the Effective Term hereof, in the Media, as agreed under the special terms. The Licensee hereby states and acknowledges that the scope of its rights to the Programs is only as licensed hereunder. Accordingly, the Licensee has no rights to the name, trademark or any other item appearing therein or related thereto, nor to any other chapter or subsequent translation thereof or sequel thereto, relating to the plot, characters, and the like.

3. **GUARANTEE:** Telemundo and the Licensee hereby state that they have the full right, power and authority to agree to, execute and deliver this Agreement, and that there is no Agreement with any other firm, person or company that might in any manner interfere with any of the powers stated herein. Likewise, Telemundo hereby states that it has full rights to Broadcast such Programs, which are free from any restriction that could hinder the exercise of any rights thereto by the Licensee.

4. **COSTS OF DELIVERY, RISKS AND INSURANCE:**

a. The Licensee shall be responsible for any risks, costs and expenses (including any insurance, freight, customs duties) arising by reason of the delivery of technical or advertising materials (including movies, videos, cassettes, DVDs, promotional materials, and the like) by Telemundo to the Licensee in order to perform this Agreement. Such technical materials shall consist in any copies – but in no case any master copies- of the

8

relevant cassettes or videotapes. At the time indicated by Telemundo, and insofar as the Licensee does not require the use of such material to perform this Agreement, as determined by Telemundo hereunder, the Licensee agrees to deliver the materials to such third party as Telemundo may indicate. In the latter case, the third party receiving the materials shall be responsible for the costs of delivery and any other costs, risks and expenses arising at the time of such delivery of materials to the third party. In any case, any risks, costs and expenses arising at the time of the re-export of such materials to their place of origin, i.e. to Telemundo, shall be paid for by whoever delivers the materials to the latter. Any delivery of technical and advertising materials referred to in this clause (by any route) shall be made by companies such as *Federal Express, UPS, DHL* or any other company designated and/or approved by Telemundo.

   **b.** The Licensee shall return the Technical Materials to Telemundo in the same condition as they were received, except normal wear and tear. Otherwise, the Licensee shall pay the cost of any copy(ies) damaged or lost during the time they were in possession of the Licensee, or in transit returning to Telemundo, and shall further assume any liability that could result from such damage or loss. As to any damage or defect the Material may have at the time it is received by the Licensee, the paragraph hereof "Other Duties of the Parties" shall apply.

   **c.** For each episode of one or multiple Programs that is lost, stolen, damaged or harmed during the time elapsed from the reception thereof by the Licensee and its delivery to a third party or, as the case may be, to Telemundo, the Licensee agrees to pay Telemundo an amount equal to the cost incurred by Telemundo to replace each episode. It is understood, however, that such payment shall not imply in any manner an assignment of rights by Telemundo to the Licensee or any other person whatsoever, with regard to the damaged or lost episode.

   **d.** The Licensee hereby acknowledges that it may not take any Programs by satellite, except with prior written authorization by Telemundo.

5. **COPYRIGHTS, TRADEMARKS, SOUND AND MUSIC TRACK:**

   **a.** The Licensee hereby agrees to include, in each and any Broadcasting of the Program(s), any indication relating to copyrights, i.e., essentially, any mention of artistic and intellectual property of the professional and technical team upon the Program(s), as they are found in the version of the Program(s) related to the transmission rights assigned by Telemundo hereunder. Such professional and technical team consists, without limitation, of actors, artists, directors, producers, script writers, other writers, and any other persons engaged for the purpose of producing and transmitting the Program(s). The Licensee shall under no circumstance omit such credits in the Program(s) broadcasts, nor shall it perform or allow to be performed, within the Territory, any act or thing that may adversely affect any copyright or trademark associated to the Program(s).

9

CR1.01.0092

Exhibit "H-1" (translation)

      The Licensee shall give notice to Telemundo of any third party act or thing it becomes aware of, which may violate or intend to violate or threaten such rights or trademarks.

**b.** The Licensee agrees to perform and acknowledge any other duties resulting from any artistic or intellectual property rights held by artistic, creative, professional and technical personnel of the Program. Such rights include, without limitation, collecting and paying any public communication rights, such as royalties for the broadcasting of music embedded in the Program, and any royalties for the public broadcast and/or performance to the talent and other artists; such payments shall be made to the relevant collecting association. The Licensee shall keep Telemundo harmless from and against any claim made in such respect, which results in a breach of such duty. The Licensee shall also take any necessary steps to safeguard the rights licensed hereunder, and shall give notice to Telemundo of any duplication or exploitation of the Program(s) by any third parties, and assist Telemundo in preventing and/or stopping such violation.

**c.** Likewise, the Licensee hereby agrees to broadcast the Program(s) without any alteration, replacement or change whatsoever to the original sound and/or music track thereof (vocal, instrumental, digital or otherwise), i.e. as it relates to the Program version corresponding to the broadcasting rights assigned hereunder.

**d.** The Licensee shall coordinate, solely and exclusively through Telemundo, any trip, tour and/or visit to the Territory, relating to any promotion of the Program(s) by any actors, talents and/or artists involved in the Program(s).

**e.** Any broadcast of any part of a Program shall be considered as a full broadcast, except in the case of trailers lasting up to three (3) minutes, used to promote the relevant Program.

**f.** The Licensee may promote the Program on its website, provided that the promotion does not exceed sixty (60) seconds, is geo-blocked to the Territory, and includes information exclusively and directly associated to Program Broadcasting by authorized Media (tune-in information referred to the day and time of the Program Broadcast and other similar details). If any such promotion results in any public broadcast payments, such as royalties for broadcasting music included in the Program(s) promotion on an Internet website, the Licensee shall be fully liable for such payments.

**g.** The Licensee shall give notice to Telemundo of each broadcast of the Program.

6. **PROHIBITION TO ALTER THE NATURE AND/OR EDIT A PROGRAM(S):** The Licensee may not edit, add, subtract or otherwise change the Program(s) or any constituent episodes thereof, which shall be broadcasted in a version that is identical

10

CR1.01.0093

Exhibit "H-1" (translation)

to the version whose Broadcasting rights are assigned hereunder. Such prohibition includes, without limitation, any material edition and/or other alteration to the title, length, dialogs and sound or music track of each Program episode.

7. **AMENDMENTS:** This Agreement may not be amended without written approval by both Parties.

8. **AGREEMENT ASSIGNMENT. NO AGENCY:** Telemundo may freely assign or transfer this Agreement to any Affiliate, subsidiary or head office thereof. The Licensee may not assign nor transfer this Agreement to any third parties, in whole or in part, under any circumstance whatsoever, unless the assignment or transfer is authorized in writing by Telemundo. The Licensee shall not act as agent for Telemundo, nor may it register as such in any territory whatsoever.

9. **ACT OF GOD. FORCE MAJEURE:**

    a. If any delivery of an episode by Telemundo, or the return thereof by the Licensee, is delayed by reason of an act of God or an event of force majeure, such as a hurricane, tornado, cyclone, earthquake, strike, revolution, etc., the delay shall not be considered as a default by the party sustaining the act of God or event of force majeure. In such case, the obligation of the party shall be stayed until the event ceases and the party can reasonably be able to fulfill its duties hereunder. The foregoing shall apply to any delay in the performance of any other obligation of the parties, but in any event the party affected by the act of God and/or event of force majeure shall prove, within five (5) days, that the delay is exclusively due to the act of God or event of force majeure under penalty that the default be deemed to be inexcusable and subject to the general rules herein on the subject of default. Likewise, the party affected by the act of God and/or event of force majeure shall use its best efforts to mitigate the impact of such event, and consequently overcome the delay in the least possible time.

    b. If the length of the delay is such that the Parties consider the proper fulfillment hereof unfeasible, the Parties shall agree upon the conditions under which the Agreement shall be terminated, without the payment of any amount in addition to the amounts already accrued.

10. **INDEPENDENCE OF THE PARTIES:**

    a. The contractual relationship under this Agreement shall be limited to the provisions of this document and does not affect in any manner the independence existing between the Parties. Therefore, such contractual relationship may not be construed as giving rise to an association or partnership of any kind whatsoever, or joint venture, agency, or representation other than the license regulated herein in relation to certain Program(s). The

11

CR1.01.0094

Exhibit "H-1" (translation)

      Licensee may not cause Telemundo to be bound towards third parties in any manner whatsoever.  Therefore, Telemundo shall not be held liable or responsible for the acts or omissions of the Licensee in relation to third parties.

  b. Each Party shall hold the other Party harmless from and against any claim or liability arising from the Party's acts or omissions in relation to the terms and/or obligations under this Agreement, including without limitation the reimbursement of attorneys' fees and procedural and/or court expenses.

## 11. PAYMENT:

  a. Telemundo shall issue invoices as provided for in this Agreement, and payments shall be made by the Licensee on the dates set forth in the special part of this document.  The Licensee undertakes to pay the total number of Broadcasts authorized in this document, regardless of whether such Broadcasts have been performed or not.  Every fee shall be paid in United States dollars by bank transfer according to the following information:

**PAYMENTS WITH ELECTRONIC FUNDS (BANKING WIRE TRANSFERS)**

**Account name:** TELEMUNDO INTERNACIONAL, LLC
**Account number:** 4426366968
**ABA #:** 026009593
**Swift:** BOFAUS3N
**Bank name:** BANK OF AMERICA
**Bank address:** 901 Main Street; Dallas; TX 75202
College Park, GA 30349

  b. The Licensee shall report, for every fee paid, the item being settled with such payment, in other words, the installment to which such payment relates, i.e. specify the allocation of the payment made.

## 12. BREACH AND INDEMNITY

  a. A party's failure to perform any of its obligations hereunder shall entitle the other party to render this Agreement automatically terminated and to collect such amounts or indemnities as may apply for any direct, indirect, or any other damage or loss sustained by the other party as a result of such breach or non-performance.  Non-performance or breach of an obligation under this Agreement that is not duly justified to the satisfaction of the performing party within no later than ten (10) days, shall be rendered as damage or loss actually sustained by such performing party, with all the consequences arising from this Agreement and applicable law.

CR1.01.0095
Exhibit "H-1" (translation)

    b. The Licensee acknowledges that in the events in which the Licensee fails to perform its contractual obligations and Telemundo takes no action to which it is entitled under this Agreement and applicable law in response to such events, Telemundo's conduct shall not be construed as a release by Telemundo of the obligations not performed or as a waiver of any right to pursue legal actions to which Telemundo may be entitled.  On the other hand, Telemundo acknowledges that in the events that Telemundo fails to perform its contractual obligations and the Licensee takes no action to which it is entitled under this Agreement and applicable law in response to such events, the Licensee's conduct shall not be construed as a release by the Licensee of the obligations not performed or as a waiver of any right to pursue legal actions to which the Licensee may be entitled.

**13. OTHER OBLIGATIONS OF THE PARTIES:** Notwithstanding such other obligations as the Parties shall be required to perform under this document or under applicable law for full performance of this Agreement, the parties agree to the following terms and conditions:

    a. The Licensee has the obligation to pay Telemundo the total price of this Agreement under the terms and conditions voluntarily agreed upon by both Parties and contained in the special part of this Agreement.  This shall include payment of minimum guarantees, excess episodes, as well as such amendments or notices as may take place as stated in this document.  It shall be optional for the Licensee to Broadcast or not the Program(s) in relation to which the Licensee acquires Broadcasting rights from Telemundo under the terms and conditions of this document; however, this shall not alter or affect the obligation contained in this clause in any way, especially the obligation to pay the total price agreed upon.

    b. The Licensee shall perform its contractual obligations in compliance with the laws, rules, and regulations applicable in the Unites States of America (including US regulations on seizures, anti-corruption, and US regulation controls) and shall secure and maintain all such approvals, permits, and rights as may be necessary for the performance of this Agreement.

    c. Telemundo has the obligation to send the Licensee, on a timely basis, the containers (copies) that include the Program in relation to which Broadcasting rights have been authorized for the Licensee to be able to physically exercise such rights.  Upon receipt of the Technical Material by the Licensee, the Licensee shall have fourteen (14) days to report any technical flaws and, in the event that any such flaws so require in the opinion of Telemundo, Telemundo shall replace any flawed episode as soon as possible at no charge for the Licensee.

    d. Telemundo shall send, at the Licensee's request, transcriptions of every episode of the Program, provided, however, that they have been made available to Telemundo by the relevant producer.  In any event, Telemundo

13

shall reserve the full right to suspend delivery of material upon any delay in the payments set forth in the special part of this Agreement, notwithstanding the indemnities that may apply.

**14. JURISDICTION, APPLICABLE LAW, AND DISPUTE RESOLUTION:**

a. The execution, construction, interpretation, compliance, performance, termination, and/or annulment of this Agreement shall be governed by the laws applicable in the State of Florida – Unites States of America, without giving rise to the application of conflicts of law and/or jurisdiction principles.

b. Any action, claim, proceedings, or lawsuit (the Actions or Proceedings) arising from or relating to this Agreement shall be brought only before the Federal or State Courts based in Miami-Dade County, Florida, and each Party shall become subject to the jurisdiction of such courts, waiving any other right to bring or start Actions or Proceedings in any other jurisdiction.

c. The Parties represent that any material breach and/or non-performance of any of the provisions of this Agreement shall purport an irreparable damage for which there is no adequate legal remedy. Therefore, the Parties agree that, in addition to any action or remedy to which they may be entitled at law or in equity, the performing Party shall be entitled to seek an injunctive relief or precautionary measure aimed at preventing a breach or threatened breach of this Agreement, as well as to seek specific performance of any of the provisions of this Agreement before the courts and in the jurisdictions stated herein.

d. The prevailing Party in any action or proceedings relating to the interpretation, construction, performance, or compliance with this Agreement shall be entitled to seek reimbursement from the other party of all costs and expenses reasonably incurred as a result of such actions or proceedings, including attorneys' fees and experts' fees.

**15. CONFIDENTIALITY:**

a. The Parties mutually undertake to keep confidential all financial, accounting, technical, or other information of which they may become aware under this Agreement. Therefore, the parties undertake not to disclose any such information for purposes other than the full performance of this Agreement, especially not to reveal such information to third parties, except in the events in which there is prior authorization in writing from the other party for the purpose expressly stated. The parties further undertake to keep the information confidential and not to deliver such information to third parties or use it for purposes other than the purposes stated in this document, except that: (1) it involves information of public domain; (2) it has been acquired or developed independently prior to this document; (3) it is required to be disclosed by a competent authority as part of tax or legal proceedings; (4) it is

CR1.01.0097
Exhibit "H-1" (translation)

required to be disclosed as part of regular review procedures of either Party by their parent company, auditors, legal counsel, or the Program producer, provided that all these persons are bound by the provisions of this clause.

b. Notwithstanding the foregoing, the confidentiality obligation agreed upon in this clause shall apply to the Parties and their direct or indirect employees that may take part in the performance of the material distribution Agreement and shall remain in full force and effect for the term of the Agreement, any extensions thereof, and three (3) additional years.

**16. TAXES:**

a. The Licensee may deduct any amounts resulting from the withholding tax applicable in the Territory to the extent that the payment and value of any amounts due to Telemundo under this Agreement are reduced in the amount of such withholding tax. Regarding such other taxes as may apply in the Territory pursuant to applicable law and/or rules and regulations, the Licensee may deduct such other taxes only to the extent previously agreed upon by the Parties.

b. In any event, if the Parties agree that the above amounts shall be discounted from the price of the Agreement, that is to say, that the Licensee shall not bear such taxes directly, the Licensee shall be required to provide Telemundo with the certificates or evidence of any taxes paid and/or amounts withheld, as the case may be, no later than fifteen (15) business days following the day on which such certificates or evidence have been issued and delivered by the competent authority, otherwise the Licensee shall be required to bear them directly.

This Agreement has been executed by the authorized representatives of the Parties in two counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

| | |
|---|---|
| **TELEMUNDO** | **LICENSEE** |
| [signature] | [signature] |
| MELANIE MONTENEGRO | JORGE MARTINEZ |
| VICE-PRESIDENT | LEGAL REPRESENTATIVE |

CR1.01.0098

Exhibit "H-1" (translation)

# ANNEX A –PURCHASE ORDER MODEL

## PURCHASE ORDER

\_\_\_-\_\_\_

**DATE:** _____

On the date hereof, September 30, 2014, between **TELEMUNDO INTERNACIONAL LLC** a company existing under the laws of Delaware, United States of North America, an office of which is located at 2555 Ponce de León Blvd., Coral Gables, Florida 33134, United States of North America, tax identification number 65-0996005 ("Telemundo"), and **CARACOL TELEVISIÓN S.A.**, a company existing under the laws of Colombia, domiciled at street 103, #69B-43, Bogotá, Colombia, tax identification number 860,025,874-2 (the "Licensee") it has been agreed to enter into a master agreement for a volume of program licenses and television formats ("Agreement"). Capitalized terms not defined in this Purchase Order shall have the meanings ascribed to them in the Agreement. This Purchase Order shall be subject to the terms agreed for the Agreement for the Broadcasting of Approved Programs, in the authorized Language, Medium, Number of Broadcasts and Territory and shall be further subject to the following terms:

A) **Program:** \_\_\_ episodes of _____, each with an approximate duration of one (1) commercial hour.

B) **Price per Episode:** _____ (US$_____)

C) **Total Value:** The Total Value of the license is _____(US$_____). (\_\_\_\_\_ episodes at US$\_\_\_\_\_ per episode)

D) **Effective Term:** One (1) year, from _____ (or at the end of the broadcast, whichever occurs first)

E) **Form of Payment:** according to the terms of the "Agreement".

**TELEMUNDO INTERNACIONAL, LLC:**              **LICENSEE:**

_____              _____

_____              _____

CR1.01.0099
Exhibit "H-1" (translation)



City of New York, State of New York, County of New York

I, Aurora Landman, hereby certify that the document "**2014-09-30 - Volume Agreement**" is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English.

_____
Aurora Landman

Sworn to before me this
August 21, 2019

_____
Signature, Notary Public

*[Notary Seal: WENDY POON, NOTARY, NO. 01PO6356754, QUALIFIED IN QUEENS COUNTY, COMM. EXP. 04-03-2021, STATE OF NEW YORK]*

_____
Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016 | T 212.689.5555 | F 212.689.1059 | WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

Exhibit "H-1" (translation)