**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 18-CV-23443-GAYLES/OTAZO-REYES

**CARACOL TELEVISION, S.A.,**

    Plaintiff,
v.

**TELEMUNDO TELEVISION STUDIOS, LLC,** *et al.***,**

    Defendants.
_____/

## ORDER

**THIS CAUSE** comes before the Court on Plaintiff's Renewed Motion for Summary Judgment as to Count I of the Amended Complaint ("Caracol's Motion") [ECF No. 83] and Defendants' Motion for Summary Judgment on All Counts of Plaintiff's Amended Complaint ("Telemundo's Motion") [ECF No. 86]. The Court has reviewed the Motions and the record, considered argument of counsel at the hearing on October 7, 2020, and is otherwise fully advised. For the reasons that follow, Caracol's Motion is denied, and Telemundos' Motion is granted.

## BACKGROUND[1]

Plaintiff Caracol Television, S.A. ("Caracol") and Defendants Telemundo Television Studios, LLC ("TTS"), Telemundo International LLC ("TI"), and Telemundo Network Group LLC ("TNG") (collectively "Telemundo"), are media production companies. This action revolves around who owns the rights in a telenovela originally produced by both Caracol and Telemundo.

---

[1] The relevant facts are undisputed unless otherwise indicated and are taken from the following statements of facts along with their accompanying exhibits: Plaintiff's Statement of Material Facts Supporting Plaintiff's Renewed Motion for Summary Judgment as to Count I of the Amended Complaint [ECF No. 83-1]; Defendants' Corrected Statement of Material Facts in Support of Motion for Summary Judgment [ECF No. 93]; Plaintiff's Statement of Material Facts Supporting Plaintiff's Opposition to Defendants' Motion for Summary Judgment [ECF No. 94-1]; and Defendants' Counter-Statement to Plaintiff's Statement of Material Facts [ECF No. 96].

1

**I.      The Co-Production Agreement and First Season of "El Senõr de los Cielos"**

On October 25, 2012, Caracol and TTS entered into a Co-Production Agreement to jointly develop, produce, and distribute a telenovela titled "El Senõr de los Cielos" (the "Series"). [ECF No. 7, Ex. A]. Pursuant to the Co-Production Agreement, Caracol and TTS would jointly own "all elements" of the Series, including "all literary, dramatic, or other material contained therein [and] all characters, concepts, properties, elements, names and title contained therein . . . ." *Id*. ¶ 5(a).[2] In the event Caracol or TTS sought to make derivative works based on the Series, the Co-Production Agreement required that the party interested in producing the derivative work first offer the other party the option to become a co-producer. *Id.* ¶ 5(b). Should that offer be rejected, the parties were to negotiate in good faith "the terms under which the interested party may be granted the sole right to produce the Derived Series . . . ." *Id.*

Prior to the production of the Series, Caracol produced a telenovela titled "El Cartel." One of the characters in "El Cartel" was El Cabo—a hitman in his thirties with dark hair and a bushy handlebar mustache. [ECF No. 94-1 ¶ 1]. Caracol licensed elements of "El Cartel", including the El Cabo character, to TTS for use in the Series. [ECF No. 94-1 ¶ 2].

It is undisputed that the Co-Production Agreement was a valid and binding contract that gave Caracol and TTS joint ownership of the copyright in the first season of the Series.[3] The first season, comprised of 74 episodes, began airing in April 2013. [ECF No. 83-1 ¶ 12].

**II.     The Letter Agreement and the Second Season**

In May or June of 2013, TTS, in accordance with the Co-Production Agreement, offered Caracol the option to co-produce another season of the Series. [ECF Nos. 83-1 ¶ 15]. Caracol

---

[2] The parties' joint ownership included "the copyright and other intellectual property rights in and to the Series," [ECF No. 7, Ex. A ¶ 5(c)].
[3] Plaintiff and TI also entered into an International Distribution Agreement for distribution of season one of the Series. [ECF No. 7, Ex. B].

declined. [ECF No. 93 ¶ 3]. The parties continued to negotiate and, on August 27, 2013, entered into a new agreement relating to the production of subsequent seasons of the Series (the "Letter Agreement"). [ECF No. 7, Ex. C]. It is undisputed that, pursuant to the Letter Agreement, TTS would produce of a second season of the Series (the "Sequel") and own all rights to the Sequel in exchange for Caracol having the right to broadcast the Sequel in Columbia. The parties, however, disagree on whether Caracol, in executing the Letter Agreement, assigned its entire ownership interest in the Series to TTS.

The Letter Agreement incorporates an annexed Term Sheet that sets forth the parties' agreement regarding the production, distribution, and ownership of the Sequel and subsequent seasons of the Series. [ECF No. 7, Ex. C].[4] Paragraph 3 of the Term Sheet, titled "Sequel", provides that TTS would "develop, produce, own, and distribute" the Sequel and that TTS has the "right to use all elements (e.g., characters, story, scenarios, locales, etc.) derived from the Series and any new elements added by TTS for purposes of creating the Sequel."[5] *Id.* ¶ 3. Paragraph 7, titled "Ownership", provides that:

> From inception through all stages of completion, the Sequel and all elements thereof, including the underlying works, format and scripts of the Series, will be exclusively owned by TTS throughout the world.
>
> TTS will own and control all exclusive, irrevocable and perpetual right, title and interest (including copyright), throughout the universe in and to the Sequel and *all derivatives of the Sequel*, and all elements, underlying works or portions thereof, including all raw footage, from the inception of production, in any and all media and formats, now known or hereafter devised, in perpetuity, including without

---

[4] The Letter Agreement also references an email in which TTS offered Caracol "the rights to broadcast the second part of the production of 'El Senõr de los Cielos . . .' in . . . Columbia, in exchange for the rights stipulated in the case of producing a second part and subsequent sequels of our 'co-production'." [ECF No. 64-3].

[5] The "Sequel" section adds that "TTS will not be entitled to use images and content licensed by Caracol for the Series, except as agreed mutually by the Parties in a case-by-case scenario." ECF No. 7, Ex. C. ¶ 3. Telemundo contends, and Caracol has not disputed, that "[t]he intent of the parties in Section 3(b) of the Letter Agreement . . . was that Caracol could not agree to assign or license to Telemundo any rights that it had licensed from third parties and did not necessarily own." [ECF No. 96 ¶ 25]. Caracol does not assert that the El Cabo character was licensed to it from a third party.

3

>limitation all literary, dramatic, or other material contained therein, and the results and proceeds of the services in connection therewith.

*Id*. ¶ 7 (emphasis added). Paragraphs 9 and 10 of the Term Sheet detail Caracol's license to exhibit the Sequel in Columbia for three years. *Id.* at ¶¶ 9-10.

In accordance with the Letter Agreement, TTS produced the Sequel and first broadcast it in 2014. [ECF No. 83-1 ¶ 17]. From 2015 to 2018, Telemundo produced, broadcast, and distributed four more seasons of the Series and a spinoff (the "Subsequent Seasons") [ECF No. 93 ¶ 23]. Telemundo bore the entire cost of production of the Subsequent Seasons, totaling in the tens of millions of dollars. *Id.* at 36.

### III.  Subsequent Agreements and Course of Conduct

On September 30, 2014, Caracol and TI entered into a volume license agreement (the "2014 Volume Agreement") for distribution of TTS television programs in Columbia including the Series. [ECF No. 64-13]. Pursuant to the 2014 Volume Agreement, TI granted Caracol a limited license under copyright to broadcast Telemundo's programs in Columbia; but the 2014 Volume Agreement expressly states that Caracol had "no rights to the name, trademark or any other item appearing therein or related thereto, nor to any other chapter or subsequent translation thereof or sequel thereto, relating to the plot, characters, and the like." *Id*. On January 1, 2017, the parties entered into another volume license agreement (the "2017 Volume Agreement") for Caracol's distribution of Telemundo programs in Columbia. [ECF No. 93 ¶ 25]. Under the Volume Agreements and related orders (the "Start Orders"), Caracol paid Telemundo hundreds of thousands of dollars per season to broadcast the Subsequent Seasons. *Id.* ¶ 26. At no time during

the performance of the Volume Agreements or Start Orders did Caracol object to the Agreements' terms or contend that it was a co-owner of the Series.[6] *Id.* ¶ 28.

## IV. Litigation

On September 5, 2018, Caracol filed its Amended Complaint alleging that it is still a joint owner in the copyright of the Series and entitled to compensation for the distribution and licensing of the Subsequent Seasons. [ECF No. 7]. In addition, Caracol contends that TTS used the El Cabo character without permission. *Id.* The Amended Complaint sets forth four claims for relief: Declaratory Judgment as to Copyright (Count I); Breach of Contract (Count II); Accounting (Count III); and Copyright Infringement (Count IV). *Id.*

The parties have now filed cross-motions for summary judgment. [ECF Nos. 83, 86]. Caracol seeks partial summary judgment as to Count I, asking the Court to declare that the Letter Agreement did not assign Caracol's copyright interest in the Series to TTS and that Caracol remains a joint owner of the Series. Telemundo seeks summary judgment as to all Counts arguing (1) Caracol's copyright claims are barred by the applicable statute of limitations; (2) the El Cabo character is not entitled to protection under the Copyright Act; (3) Caracol lacks standing to sue Telemundo for copyright infringement; and (4) all of Caracol's claims fail because, pursuant to the Letter Agreement, Caracol assigned all of its rights in the Series to Telemundo. [ECF No. 86].

## LEGAL STANDARD

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled

---

[6] On August 13, 2014, before execution of the Volume Agreements, Caracol sought compensation from Telemundo for Telemundo's license of format rights in the Series to NBC. [ECF No. 57-2, Ex. 1]. In response, Telemundo asserted that, under the Letter Agreement, "the format and script rights of Series, among other elements of the Series reverted back to Telemundo" and, therefore, Caracol was not entitled to compensation. *Id.* at Ex. 2.

5

to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

## ANALYSIS

Caracol contends that, despite its execution of the Letter Agreement and Telemundo's undisputed and complete ownership of the Sequel, the parties continued to be bound by the Co-Production Agreement for the Subsequent Seasons. Each of Caracol's claims stem from the premise that Caracol continues to have an ownership interest in the Series. Count I seeks a declaration that the Letter Agreement did not constitute an assignment of Caracol's copyright in the Series to Telemundo. Counts II and III are based on Telemundo's purported breach of the Co-Production Agreement—a breach that could only occur if Caracol still had an ownership interest

in the Series. And, to the extent that the El Cabo character can be subject to copyright, Caracol can only prevail on Count IV if it continued to have an ownership interest in the character. Conversely, Telemundo argues that it is entitled to summary judgment on each of Caracol's claims because, pursuant to the Letter Agreement, Caracol transferred all of its rights in the Series and the El Cabo character to Telemundo. The Court agrees with Telemundo.

I.     **Interpreting a Contract**

"The interpretation of private contracts is ordinarily a question of state law." *Chira v. Saal (In re Chira)*, 567 F.3d 1307, 1311 (11th Cir. 2009) (internal quotations omitted). This principle extends to agreements relating to copyrights. *See, e.g.*, *Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., L.L.C.*, 596 F.3d 1313, 1328 (11th Cir. 2010) (explaining that a court must apply state law in its analysis of the breach of a copyright license agreement). The Letter Agreement provides that it will be interpreted and construed in accordance with Florida law. [ECF No. 7, Ex. C].

Under Florida law, "[c]ontract interpretation begins with a review of the plain language of the agreement because the contract language is the best evidence of the parties['] intent at the time of the execution of the contract." *Spungin v. GenSpring Family Offices, LLC*, 883 F. Supp. 2d 1193, 1198 (S.D. Fla. 2012) (quoting *Taylor v. Taylor*, 1 So. 3d 348, 350 (Fla. 1st DCA 2009)) (internal quotation marks omitted). "In the absence of an ambiguity on the face of a contract, it is well settled that the actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls." *Id.* (quoting *Acceleration Nat'l Serv. Corp. v. Brickell Fin. Servs. Motor Club, Inc.*, 541 So. 2d 738, 739 (Fla. 1st DCA 1989)) (internal quotation marks omitted). If a court determines that the terms of a contract are ambiguous, only then is "parol evidence [] admissible to explain, clarify or elucidate the ambiguous terms." *Id.*

(quoting *Taylor*, 1 So. 3d at 350-51) (internal quotation marks omitted). "[T]he words should be given their natural, ordinary meaning," and "where the language is plain a court should not create confusion by adding hidden meanings, terms, conditions, or unexpressed intentions." *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996).

## II. The Plain Language of the Letter Agreement Reflects the Parties' Intent

The Court finds that the plain language of the Letter Agreement is unambiguous and evinces the parties' intent to transfer all of Caracol's ownership interest in the Series to Telemundo.

The Letter Agreement clearly provides that TTS would "develop, produce, own, and distribute" the Sequel in exchange for Caracol having the right to broadcast the Sequel for three years in Columbia. [ECF No. 7, Ex. C ¶¶ 3, 10]. Moreover, the Letter Agreement granted TTS the "right to use all elements (e.g., characters, story, scenarios, locales, etc.) derived from the Series and any new elements added by TTS for purposes of creating the Sequel." *Id.* ¶ 3. Caracol's assignment of its ownership interest in exchange for broadcast rights in Columbia included the "perpetual right, title and interest (including copyright), throughout the universe in and to the Sequel and *all derivatives of the Sequel*, and all elements . . . in perpetuity, including without limitation all literary, dramatic, or other material contained therein . . ." *Id.* ¶ 7 (emphasis added). This language is clear and supports the only reasonable interpretation of the Letter Agreement: Caracol agreed to transfer its entire ownership interest in the Series, including the El Cabo character, to TTS in exchange for a license to broadcast the Sequel in Columbia. *Id.*

Accordingly, the Court finds that the plain language of the Letter Agreement is unambiguous and establishes that after season one, Caracol no longer had an ownership interest in the Series. As a result, Telemundo is the sole owner of all elements of the Series. Therefore,

Telemundo was free to use those elements in the Subsequent Seasons and to license the Subsequent Seasons to third parties without permission from, or compensation to, Caracol.

### III. The Parties' Course of Conduct

The parties' course of conduct supports the Court's finding that Caracol transferred its rights in the Series to Telemundo. "Given that the purpose of judicial interpretation is to ascertain the parties' intentions, the parties' own practical interpretation of the contract—how they actually acted, thereby giving meaning to their contract during the course of performing it—can be an important aid to the court." *Hirsch v. Jupiter Golf Club LLC*, 232 F. Supp. 3d 1243, 1252 (S.D. Fla. 2017) (quoting 11 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 32:14 (4th ed. 1999)). "In this vein, the Court may review the original contracting parties' post-contract course of performance of the agreement to interpret their intent.' *Id.*

Over many years following the execution of the Letter Agreement, Caracol entered into agreements with, and repeatedly paid, Telemundo for the right to broadcast the Subsequent Seasons. Indeed, pursuant to the Volume Agreements and multiple Start Orders, Caracol paid Telemundo hundreds of thousands of dollars per season for those rights. Caracol's conduct is consistent with a finding the parties intended for Telemundo to own all rights in the Series. *See Treasure Salvors, Inc. v. Unidentified, Wrecked & Abandoned Sailing Vessel*, 556 F. Supp. 1319, 1336 (S.D. Fla. 1983) (citing Restatement (Second) of Contracts (1981) § 202(4), which provides "[w]here an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement"). Indeed, why would Telemundo bear the entire cost of production for the Subsequent Seasons if it did not have complete ownership? Moreover, why would Caracol

pay hundreds of thousands of dollars to broadcast the Subsequent Seasons if it had retained rights in the Series? The parties' actions only make sense under the Court's interpretation of the Letter Agreement.

### IV.  Telemundo is Entitled to Summary Judgment on All Claims

The Court's finding that, pursuant to the unambiguous terms of the Letter Agreement, Caracol transferred all of its interests in the Series to Telemundo is fatal to all of Caracol's claims. Caracol's copyright claims (Counts I and IV) fail as Caracol no longer has a copyright interest in the Series, including the El Cabo character. Indeed, the Letter Agreement granted TTS ownership of "all elements" of the Series, Sequel, and derivatives of the Sequel, including "characters." [ECF No. 7, ¶ 3]. This broad assignment clearly establishes that Caracol no longer has an enforceable copyright interest in the Series or the El Cabo character. Caracol's breach of contract and accounting claims (Counts II and III) fail as there could be no breach of the Co-Production Agreement after Caracol assigned its ownership interest in the Series to Telemundo. Accordingly, having found no genuine issues of material fact and that Telemundo is entitled to judgment as a matter of law, the Court shall enter summary judgment in favor of Telemundo on all counts. [7]

### CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Plaintiff's Renewed Motion for Summary Judgment as to Count I of the Amended Complaint [ECF No. 83] is **DENIED**, and Defendants' Motion for Summary Judgment on All Counts of Plaintiff's Amended Complaint is **GRANTED** [ECF No.

---

[7] Because the Court finds Caracol's assignment of its interest in the Series dispositive, it does not address Telemundo's additional arguments. The Court notes, however, that it is likely that Caracol's copyright claims (Counts I and IV) are barred by the Copyright Act's three-year statute of limitations. *See* 17 U.S.C. § 507(b). Caracol learned that Telemundo claimed complete ownership in the copyright of the Subsequent Seasons and Spinoff in August 2014, [ECF No. 57-2], but did not file this action until August 23, 2018.

86]. The Court will enter a separate judgment, in accordance with Federal Rule of Civil Procedure 58.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 19th day of January, 2021.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE